Incorporated et al. Arguments not to exceed 15 minutes or preside. Mr. Barrett for the appellate major speech. Please announce your rebuttal. Good morning, your honors. I'm Patrick Barrett of the Nashville Bar, and I would like to make my rebuttal plea. Thank you. May it please the court, counsel. Today the court is presented with the review of false claims act case in which the judge misapplied rule 9B and misconstrued the applicable Medicare conditions of payment. The basic, the most basic aspect of Medicare home care coverage is that a physician must certify several things before the services can begin. The first thing the physician must certify is that the patient is homebound. Physician must also certify that the patient requires skilled nursing services or therapy. The physician must also certify that a plan of care has been established and that the physician's plan of care. In this case, we have identified specific examples where that did not happen, and it did not happen on a widespread basis. The defendants in this case basically signed up their assisted living facility residents for home care provided by their corporate sibling and provided all these services. After the care is over, then they go to the doctor and say, sign these certifications. That stands the sequence on its head, and it violates Medicare conditions of payment that are material to the government's decision to pay. Couldn't there be a verbal order and then have the certification later on? The regulations do not provide for a verbal order as it respects to the certification. It does provide for a verbal order on the plan of care. In this case, we have alleged specific examples where there was no verbal order of a plan of care, much less, even if you could argue that a verbal certification is okay, there weren't verbal orders along those lines. I thought there were two specific patients where you alleged there were not verbal orders. Patients A and B. With respect to the others, why couldn't there be verbal orders to cure the problem? There were no verbal orders as it relates to the certification on any of the claims that we submitted. Did you plead that? Yes. Where would we find that? In the complaint, they say no doctor certified that the patients made the certification until after the episode was complete. Certification is the writing. That's different than the verbal order. What I'm trying to figure out is if we disagree with you on basically what is a timing question of when these forms have to be signed by a doctor. Is there anything left to this case? We're not talking simply the fact that the signatures weren't obtained in time. We're saying that there was no certification of any kind prior to the episode of care. That's what our allegations are in this case. What's Ms. Prather's personal knowledge, affirmative knowledge of those facts? It sounds like while you're making that statement, I don't know that the record supports the definitive documentation of that. That's part of the problem in the case, I think. Well, with respect to patients A and B, we had the actual documents in front of us and there is nothing about a verbal order of any kind. And in order for a verbal order to be effective, it has to be documented in the plan of care. And there simply did not happen. I thought the certifications could be done at the time the plan of care is established or as soon thereafter as possible. That is correct. So you've been telling us it had to be done before the care was given, but that's not true. The regulations allow for leeway for a certain number of days, not infinitely. No, as soon thereafter as possible. And so the theory of the other side is that there is one year, as I understand it, to make these certifications. What's wrong with that? Well, if you accept that argument, then at the time the plan of care is established or as soon thereafter as possible is a nullity. And you're strictly dealing with the statute. If the theory is one year, why is it a nullity? Because it's not at the time the plan of care is established. What language, can you give us the exact language which says it has to be done at the time the plan of care is, I think you just said established? What section are we looking at? We're looking at 42 CFR 424.22. 424.22? Yes. And what does it say? It says that the certification... I have written down, at the time the plan of care is established or as soon thereafter as possible. Correct. So if you say that it has to be done before the care, then you write out or as soon thereafter. Well, the purpose of the regulation is the policy of the government that... If what she's saying is correct, it's writing out one provision. But if you're saying, if what you say is correct, it's writing out another provision. What I'm saying is... Is that true or is it not true? It's not true. And so... So saying it has to be done before the care is true to the language of saying it can be furnished as soon as practical thereafter? If it's done after the care? I'm sorry. I'm just repeating the language. Yeah. So what does as soon thereafter as possible mean in this provision? What does it mean? I think it means, it recognizes the reality of a situation where doctors have busy schedules and you can't, you don't want to delay care because you can't get in to see a doctor. And so there is a little bit of lead time there. And the face-to-face and counter documentation, it says that the face-to-face can take place up to 30 days after the care has started. And so in that kind of a situation, it gives the providers leeway. We know it doesn't have to start before the care. It doesn't have to occur before the care started. Because it can be up, the face-to-face can occur 30 days later. And then, would that then trigger the, or as soon thereafter as practical after that? I would think that the, if the face-to-face can occur 30 days later, the certification can take place at that time. But the point. Where do you get that? Why does that mean at that time as opposed to some reasonable period of time, whatever that means after that? I meant as a reasonable time after that. But certainly before the care is over. All of this presumes that these things even apply to these requests for anticipated payments as opposed to the final payment. That's also hotly disputed in this case, right? Yes. So I'll go back to where I was. Let's assume that we disagree with you on these timing questions and whatever that additional consideration you just added in that I think we've now refuted. Is there anything left other than A and B? Other than patients A and B? Right. Well. And A and B is only because you say the record doesn't reflect there was verbal authorization. In order to bill a wrap. You're not saying there wasn't verbal authorization. You're just saying the record doesn't reflect there was verbal authorization. I'm saying there wasn't a verbal authorization. Was not? There was not a verbal authorization. How does your client know that? Because she has the records of those claims, those particular claims. And there's no verbal order at all in there. And in order to be effective. But just listen a second. Isn't there a distinction between saying there wasn't one or the paperwork doesn't reflect one? I agree that she can look at the paperwork and say it doesn't reflect there is one. But she doesn't know that there really wasn't one. And that there was a scheme to send these things in without one that might have occurred but wasn't documented. Well, in order to be effective, it has to have been documented. And we believe under the circumstances of the case, there will be evidence to demonstrate that the doctors weren't involved at all on the front end. And you go for your documentation of the verbal order to a particular regulation, which as I understand it is 42 CFR 409.43, which says that the verbal order has to be recorded in the plan of care and has to describe the services to be provided and so forth, so that that's essentially saying that a person, not a doctor, has to put it into the record. Right, it has to be attested by the person who took the order as to the circumstances in which the oral order was given. This is also a case. So the regulations and the guidance from CMS says that the physician is supposed to give the orders before the care starts to get the ball rolling. There is a little bit of leeway in the regulations to account for the reality of this IRF and doctor schedules, but it certainly doesn't give them up until a year after the care was provided. With respect to Rule 9b, with respect to patients A through D, the defendants in the court below agree that we met 9b with respect to those claims, the final episode claims. They say that we did not meet them with respect to the wraps. And I can say that the nature of the prospective payment system is the claims aren't held unless there has been a wrap. Every one of these claims was in a discrete category of the Hill Claims Project. This isn't all of their claims. These are just the narrow band of claims in the Hill Claims Project, and all of them involved a wrap. There would be no claim to be held if there weren't a wrap. With respect to Exhibits A and B, we simply say that the information that we've provided in the complaint gives the defendant more than sufficient information to form a responsive pleading. And using the information in our complaint with the computer system that we talked about in the complaint, the spreadsheets and all of that, there is no question to a certainty that Brookdale knows the amounts that were billed and the amounts that were paid by Medicare for every one of those claims in Exhibits A and B. You said that's sufficient to meet the heightened pleading requirement under 9b? Yes. What about that meets the particularity requirement? Well, we give the patient name, we give the date, the episodes of care, the dates of treatment, we give the facility where the care was provided, we give the home care agency that provided the care, and our client knows that wraps were billed for all of these claims. She worked in the same floor with the billing personnel. Well, assuming that that satisfies the billing requirement, how does it satisfy the falsity requirement from what you've just said? Because we know that there was no certification at all until after the episode was complete. So if we disagree with you on that requirement, which is one of the things we've been talking with you about, then is there something else that makes those false? No. If your honors agree that the care can be certified after the care has been provided retroactively, then those claims would not be false. So all of your claims then would fail, not even A and B? Right. We believe that the care has to be provided under a doctor's plan of care, established by a physician, under a physician's direction, and without that, you can't go back and reauthorize it on the front end. Or as soon thereafter as possible. Right. That's the other piece that has to be. Right. Let me ask you a little subtlety about that to just make sure I understand your position. Are you saying that the scheme here was that no doctor authorized any of this stuff and they just fined some doctor later? Or are you saying that there was or probably might have been a doctor involved and that doctor didn't sign it until later? Do you see the distinction I'm drawing there? I think so. And we're saying that no doctor who meets the requirements of certification, which means you can't have financial interest in the entity, no doctor certified the need for home care and all those requirements until after the care was over and already given. So, in other words, the doctors that did certify them, you're saying, had nothing to do with the developing of the plan of care because they weren't even around at that time? Well, I don't know that they're not around at that time. With respect to this patient? Well, they did not establish the plan of care, correct. Okay. Did you allege that, that the doctor who certified did not establish the plan of care? Well, I thought the essence of your claim was that the doctor certified afterwards. Well, part of the certification includes that the plan of care has been established. So the certification is that. So you're attacking the contents of the certification? I'm saying there was no certification at all. As opposed to timely. The certification, at least on a lot of these, occurred later. So we understand you're arguing that it occurred at the wrong time, but are you saying that doctor just lied or that the doctor didn't lie but the timing was in violation of the regulations? I'm not saying that the doctors lied. I'm saying that they did not order the treatment until after the treatment was provided. And are you saying that they didn't review the plan of care before certifying it and determine that that was appropriate and sufficient and met the various requirements? They did not do that before the care was provided or soon thereafter. They did that after the care was over. Is the essence of your claim that doctors weren't ordering care but that non-doctors were deciding that certain care should be given and then Brookdale later on is getting doctors to sign off on these certifications? Is that the essence of your claim? Yes. Brookdale employees enroll these people in home health care and then whether or not they had a doctor at that time or not, the doctors did not certify or establish the plans of care until after the care was provided. And this is all in your complaint? Yes. No certification was provided until after the episode was complete. Thank you. Thank you. May it please the Court. Brian Roark for the Defendant's Appellees. The Court asked Appellant's Counsel the question of whether the essence of the case is that physicians weren't involved in the care of these patients until after the fact. Appellant's Counsel said yes, that is the essence of the case. The Court can look at the complaint. Those facts simply are not alleged in the complaint. The first time that that argument has been made has been in the briefing on the appeal. What is plaid in the complaint is a timing issue. After the Court dismissed the first amended complaint with leave to amend, the relator revamped her complaint and added a new theory of liability relating to the submission of wraps. The second amended complaint does not make specific factual allegations that physicians weren't involved in the care at all until after the care had ended. Rather, what the complaint alleges is that the doctor didn't sign the certification fast enough and that the doctor didn't complete the face-to-face documentation fast enough. How much time does a doctor have to complete the certification under the relevant regs and statutes? According to the regulation, it is as soon as possible after the plan of care is entered into. CMS has not given further guidance as to what that term means other than to say the agency has up until one year after service has ended to submit the claim. We're not necessarily taking a position in this case as to a specific time period. CMS didn't say, well, you've got to do it within a week. You've got to do it within five months, nine months. CMS said you need to get the physician certification as soon as possible after the plan of care is entered into. Well, you are taking the position in the sense that saying as long as it's obtained before you file the final request for payment, you're satisfying the regulations, right? That is correct. For billing purposes, as long as the certification is obtained before the claim is submitted, that would be considered sufficient. Does the certification here certify that the doctor established the plan of care? No. It certifies that the doctor agrees to the plan of care that was put together. The regulations say that the plan of care is to be put together in collaboration between the therapist and the nurses and the physician. The doctor is not necessarily an expert in setting out what the therapy should consist of. The doctor says, I want this patient to get therapy of a certain type. Is the doctor certifying that that collaboration occurred when the doctor certifies, regardless of when the certification occurs? The doctor is certifying that the plan of care was appropriate for that particular patient. But the plan of care does not have to be approved or developed before the certification by a doctor? That's correct. In order to bill a wrap, the agency must have sent the plan of care to the physician. But for billing purposes, the physician doesn't have to provide his or her certification at the time that the plan of care is entered into. What about this thing about verbal authorization? Where does that fit in? The first thing that I would like to mention with respect to that is, and I believe that the court has noted this, allegations relating to verbal orders only comes up with respect to patient A and patient B. The complaint does not allege lack of verbal orders as part of some overarching scheme. The complaint says that patient A is a representative example of providing care to patients where the actual care provided doesn't match the diagnosis of the patient, which really isn't a theory that's even being pursued anymore by the plaintiff. Patient B is listed as a representative example of a patient where the defendants billed before they had the physician certification. As far as the allegations relating to patient A and patient B, we would first argue that the plaintiff hasn't adequately pled presentment with respect to those two claims. Secondly, the way that the plaintiff has described the verbal order allegations continually changes. What the second amended complaint says is that there wasn't a properly attested verbal order. In response to our motion to dismiss in front of the trial court, what the plaintiff said is there's not a properly documented verbal order. Now what the plaintiff is saying in its briefing on appeal is that there was no verbal order at all. We would suggest that each of those allegations touches on different regulatory requirements. We're not really sure what the plaintiff is alleging. Is the plaintiff saying that the doctor never gave the verbal order at all? Is the plaintiff saying that the verbal order came but it was never documented in the record? Is the plaintiff saying that the verbal order came but it wasn't documented by a nurse, a registered nurse, which is what's required in the regulation? Basically, if the court just looks at what is in the second amended complaint relating to verbal orders, it is pleading a conclusion. It is pleading that there wasn't a properly attested verbal order, but the complaint doesn't allege specific allegations to explain the basis for that. On the certification requirements that we've been discussing, does the government spell out the form in which the certification takes or do the providers prepare their own? The government doesn't specify the form that the certification has to take. The government, CMS, has specified what has to be included in the certification. So they do say what the doctor has to certify? That's correct. And do they say the doctor has to certify that the doctor did the things that the realtor is saying didn't happen in this case? I'm not sure I'm following with respect to the things that didn't happen in the case. They're saying that these certifications were both untimely, and he's alluding to the fact that they're false. So we were trying to figure out what is the falsity. Is it because they weren't involved at all or because they were involved but they didn't document until later? That's what we're trying to figure out. So it just seems to me that if CMS says what you have to certify, then that is a pretty good reflection on what the doctor had to do. I would agree with that. Putting it another way, it does seem sort of odd that if there are certain things that had to happen at a certain time, that they would have asked then the doctor to certify that. I would agree with that. It's set forth in 42 CFR 424.22 that CMS views the physician as the gatekeeper in terms of deciding whether or not home health services can be paid for. The physician has to certify that he or she actually met with the patient. That's the face-to-face encounter. Met with the patient and is certifying that the patient is or was under the physician's care, that the patient is or was homebound, and that the patient received skilled services that were called for. So the doctor signing the certification has to be the one who had the face-to-face? Not necessarily, but the doctor who is providing the certification is required to have met with the patient face-to-face. And that can occur 30 days after the plan starts? That's right. It can happen up to 90 days before. It can come 30 days after care has begun. 90 days before, 30 days after? Yes, ma'am. Just to clarify again, then, the doctor signing the certification has to be the one who had a face-to-face with the patient? I think the regulations allow some circumstances where a different physician could sign, but I don't think that's relevant to the allegations here. So I don't want to say absolutely, but I would answer the question. In order to complete the certification, the doctor must have had a face-to-face encounter with the patient. That was added to the regulations in 2010 because CMS didn't want the doctor certifying based on having seen the patient a year ago or never having seen the patient at all. I'm just curious. I understand how the realtor works in this claims department, and she can go through and look to see what's in the file and what the dates are on certain things and make the claim that it does or doesn't meet the regulations. I get that. But does the realtor claim to have any information as to whether that particular doctor did or did not have the face-to-face as opposed to when that occurred? No, Your Honor. As the district court found, besides not pleading falsity, this complaint should also be dismissed because the relator hasn't adequately alleged that connection. She has made allegations about lack of timely signatures. She does not connect that to claims that were actually submitted to the government. The Sixth Circuit now has a long line of cases that says particularized allegations about an actual claim has to be included in pleading an FCA case. But didn't we allude to the possibility of an exception to that? The court has on multiple occasions alluded to the possibility of applying a relaxed standard in circumstances where the plaintiff is unable to plead an actual claim. And why isn't this case that? As the Sixth Circuit has described, the circumstances under which a relaxed standard would apply, in Chesbrough, the court said that it could find a strong inference if the relator had personal knowledge about the billing process, personal knowledge about the submission of claims. Chesbrough cited to three different cases where a relaxed standard arguably would have been applicable. In all three of the cases that the Sixth Circuit cited to, the relator had actual knowledge relating to the billing process for the defendant. In two of those cases, the relator actually worked in the billing department. In the third case, the relator was a nurse, similar to the relator in this case, but the relator in that case alleged that she had had conversations with the office administrator who submitted the claims. And based on those conversations with the office administrator, she was able to plead with requisite specificity that claims were actually being submitted. All that the relator here has done is she has listed the person who was over the billing department, and she said that the billing department happened to also be on the same floor that she worked on. And we would submit, you can't satisfy Rule 9b through proximity. You have to actually demonstrate that you have a, you have to demonstrate facts or plead facts. Why wouldn't her, why wouldn't the relator's role in this process, the held claims group or whatever it's called, why wouldn't her role be enough to give her the basis for believing that the claims were submitted? What paragraph 69 of the second amended complaint notes is that the relator worked on pre-bill review of claims. She was reviewing medical records to see if the medical records contained all the requisite parts that needed to be in the medical record, so that the medical record could be released and taken to the billing department. As far as what happened in the billing department after it was received, I know that the relator alleges that claims were submitted to Medicare, but that's nothing more than speculation on her part. She didn't have access? Even though that was not a part of her specific duties, are you saying that she didn't have access or that she didn't allege that she had access? I'm saying that she does not allege any specific facts relating to the billing process itself. And what the Sixth Circuit has said is, if you can't plead particularized allegations of actual claims, which she has not done, then in only limited circumstances could the court relax the Rule 9B standard. And what I'm saying is, she has not pled sufficient facts to be able to do that here. If you look at what she alleges about the wraps, she says that they were billed on or about the date that the services began. She says that they were billed for 60% of the total charges. That is information that anyone, a stranger on the street, could allege just by looking at the regulation. The regulation says a wrap is supposed to be submitted as soon as services have started being provided. The regulation says a wrap is to be billed at 60%. That does not constitute specific facts supporting that claims were actually billed. Am I right that if this panel was to follow through on the intimation that maybe some of the requirements could be relaxed, it would only be with respect to whether a claim had been submitted? It wouldn't be any relaxation with respect to falsity? That's correct. There aren't any cases that suggest you relax any of the other three requirements? That's correct. They're two separate analyses. And here, as the district court found, the relator doesn't satisfy the presentment element as to the wraps claims. And then regarding falsity, the district court only reached the issue of whether she had adequately pled the falsity of final billed claims. The district court did not reach the issue of whether she had, because it threw out the wraps claims on the presentment element, the district court didn't reach the issue of whether she had satisfied falsity as to the wraps claims. But that was fully briefed below. And this court is certainly within its rights to address those issues as well. Ultimately, what I would say is that what is significant here is the relator doesn't allege a single circumstance where the defendant's ever submitted a claim without having first obtained the physician certification based on adequate face-to-face documentation. And in those situations, she doesn't satisfy her requirements to plead a violation of the FCA. Thank you. Regarding her allegations about billing, she specifically alleges that patients A through D were billed and she specifically billed patient D and gave the amounts and all of the requisite information. And the defendants in the court below conceded that the particularity requirements were met for those claims, for the final episode claims. She has personal knowledge of defendants' business practices with respect to billing of Medicare home health claims. She knows from working at it for 15 months, that's all she did every day. She knows that all of these claims, wraps, had been billed. In order to be held, a wrap had to have been billed. It's a necessary thing. So she has enough knowledge in the context of this case, particularly with respect to the prospective payment system, which has a certification requirement. The statute says that the prospective payment system has to meet the certification requirements. And she alleges, based on her personal knowledge, direct knowledge, that wraps were billed for all of the claims without the requisite certifications. As to the certifications themselves, I was discussing with your fellow counsel the question of whether the requirement of what the certification has to include is spelled out in the regulations. He said yes. Do you agree with that? Yes. Now, does the certification the government requires say that they have to certify all of the things that you say were not done properly in this case? Yes. So if we look at the certification requirements, it will say that they had to certify things in the way in which you interpret the regulations as to who has to do what when. It says the certification has to take place at the outset, by the time the plan of care is established as soon thereafter as possible, and the contents of the certification are spelled out in the regulations. And I think we agree on what the actual regulations say as to what the certification is. With regard to timing, CMS, well, in 1999, they say that in order for Medicare to pay for home health services, the physician must order the home health services either orally or in writing prior to the services being furnished. And CMS clarified, based on its longstanding policy, that it is not acceptable for home health agencies to wait until the end of a 60-day episode of care to obtain a completed certification. It's crystal clear. And the defendants know what the regulations mean. They did not obtain the certifications. After the fact, they got the doctors to certify them. That does not change the fact that the certification was not properly obtained. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?